J-E02006-18

2019 PA Super 176

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellant<br><br>v.<br><br>RICHARD HOLSTON<br><br>Appellee | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br><br>No. 223 EDA 2016 |

Appeal from the Order December 21, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0005331-2015

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
MCLAUGHLIN, J.

DISSENTING OPINION BY STABILE, J.:                **FILED MAY 31, 2019**

The Majority concludes the Commonwealth failed to establish a *prima facie* case against Appellee for perjury or insurance fraud and waived its claims of criminal conspiracy and obstruction of justice for failure to include records necessary for this Court's review.  Because I believe the Commonwealth satisfied its burden of establishing a *prima facie* case on the four enumerated charges and has not waived any claims, I respectfully dissent.

As this Court explained in **Commonwealth v. Dantzler**, 135 A.3d 1109 (Pa. 2016) (*en banc*), "[w]e review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the

Commonwealth." *Id.* at 1111 (citations omitted). In *Dantzler*, we recognized that our Supreme Court, in *Commonwealth v. Karetny*, 880 A.2d 505 (Pa. 2005), rejected this Court's application of an abuse of discretion standard on review of a pre-trial *habeas* matter when determining whether the Commonwealth presented *prima facie* evidence of the crimes charged. *Id.* at 1112. "[T]he Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." *Id.* (quoting *Karetny*, 880 A.2d at 513).

In *Commonwealth v. Ouch*, 199 A.3d 918 (Pa. Super. 2018), this Court observed:

> "A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime." *Commonwealth v. Black*, 108 A.3d 70, 77 (Pa. Super. 2015) (citation omitted). As we have explained previously:

>> The Commonwealth establishes a *prima facie* case when it produces evidences that, *if accepted as true*, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, **the weight and credibility of the evidence are not factors at this stage**, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

> ***Commonwealth v. Marti***, 779 A.2d 1177, 1180 (Pa. Super. 2011) (internal citations and quotations omitted) (emphasis added). Moreover, "suspicion and conjecture are not evidence and are unacceptable as such." ***Commonwealth v. Packard***, 767 A.2d 1068, 1071 (Pa. Super. 2001) (citations omitted). Proof beyond a reasonable doubt is not required. ***Black***, 108 A.3d at 70; ***see*** [***Commonwealth v. McBride***, 595 A.2d, 589, 591 (Pa. 1991)] (noting that the *prima facie* hurdle is less demanding than the Commonwealth's burden at trial of proving guilt beyond a reasonable doubt).

***Id.*** at 923.

The Majority concluded the trial court correctly dismissed the charges against Appellee because the Commonwealth failed to establish a *prima facie* case for any of the four charged crimes.[1] As we recognized in ***Ouch***,

> "It is settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." ***Commonwealth v. Karetny***, 583 Pa. 514, 880 A.2d 505, 513-14 (2005) (citations omitted). "[T]he trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial *prima facie* burden to make out the elements of a charged crime." ***Id.*** at 513. Therefore, we are not bound by the legal determinations of the trial court. ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa. Super. 2016).

***Id.***

As reflected above, we are to examine the record to ascertain whether the Commonwealth has established a *prima facie* case of the crimes

---

[1] Although the Majority determined the claims relating to criminal conspiracy and obstruction of justice were waived for lack of an adequate record, the Majority suggested those claims would fail, even if not waived. ***See*** Majority Op. at 21-26; 29-31.

charged. In doing so we are to read the evidence in the light most favorable to the Commonwealth's case and give effect to inferences reasonably drawn from the evidence of record. Again, at the preliminary hearing stage, the Commonwealth is not required to prove the elements of the crimes beyond a reasonable doubt but is required to present evidence of the existence of each element of the crimes charged.

With regard to perjury, the Majority provides the statutory definition of the crime, recognizing a person is guilty of perjury "if, in any official proceeding, he makes a false statement under oath . . . when the statement is material and he does not believe it to be true." Majority Op. at 9 (quoting 18 Pa.C.S.A. § 4902(a)). Further, a false statement is material "if it could have affected the court or outcome of the proceeding" and "the test of the materiality of a false statement is whether it can influence a fact-finder, not whether it does." *Id.* (quoting **Commonwealth v. Lafferty**, 419 A.2d 518, 521-22 (Pa. Super. 1980) (citations omitted)).

As the Commonwealth contends, the basis of the perjury charge was the false testimony, under oath, at the September 16, 2014 grand jury hearing during which Appellee testified he could not provide documentation related to the Risoldi window treatments because Summerdale Mills had gone paperless and his computer hard drive and back-up system had failed. Commonwealth Brief at 20. Appellee claimed he conducted an exhaustive search for documents relating to Risoldi window treatments, yet he produced

- 4 -

only 68 pages of documents consisting of diagrams for window treatment fabrication. *Id.*

The recovery of more than 450 pages of documents during execution of a search warrant three weeks later—including invoices, work orders, estimates, shipping logs, payment logs, and installation logs—underscores Appellee's dishonesty, especially in light of the 189 pages of Risoldi documents recovered from the office that had Appellee's name on the door. *Id.* at 20-21 (citing, *inter alia*, N.T., 8/19/15 at 15-53 and Receipt/Inventory of Seized Property, 10/9/14). Viewing the evidence in the light most favorable to the Commonwealth, including reasonable inferences drawn from that evidence, I find the evidence was sufficient to establish a *prima facie* case of perjury relating to Appellee's testimony to the grand jury about the existence of Risoldi documents and the fact Summerdale Mills' computers were inoperable, matters material to the Risoldi insurance claim.

With regard to the criminal conspiracy charge, the Majority concludes the claim is waived for failure to include documents in the certified record. Majority Op. at 19-21. Regardless, the Majority indicates the claim would "fail[] under generally applicable legal principles" even if the record were complete. *Id.* at 21. I disagree.

As the Commonwealth recognizes:

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a

shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

***Commonwealth v. Ruiz***, 819 A.2d 92, 97 (Pa. Super. 2003) (citation omitted). The Commonwealth argues that the Risoldis' investigator, Mark Goldman,[2] delivered a binder of documents to the Risoldis' insurance carrier, American International Group, Inc. ("AIG"), and to the Office of the Attorney General after the Attorney General's search warrant was executed at Summerdale Mills. According to testimony from AIG's adjuster, the binder included documents relating to the Risoldis' window treatments. While the binder was not included in the certified record, there was testimony relating to documents included in the binder, including various "invoices" ostensibly from Summerdale Mills that listed dollar amounts of charges without any description of services supporting the charges. Importantly, several reflected Summerdale Mills' name without an "e" at the end of Summerdale.

_____

[2] Goldman was named in the grand jury's December 2014 presentment, along with Appellee and the Risoldis. ***See*** Majority Op. at 3.

These documents were different from the ones the adjuster previously received.  N.T., March 30, 2015 Preliminary Hearing Proceedings, at 1785.

To put this matter in context, it is important to note that Claire Risoldi claimed AIG was harassing Summerdale Mills.  In order that her own reputation would not be impugned, Claire instructed the adjuster not to contact Summerdale Mills directly, indicating she would obtain whatever AIG might need from Summerdale Mills.  *Id.* at 1766.  The adjuster acceded to Claire's demand.  The testimony reflects that the documents in the binder were provided by the Risoldis' investigator not only to the adjuster but also to Appellee's counsel.  N.T., 10/15/15, at 22.  As the Commonwealth appropriately suggests, and considering the evidence and reasonable inferences in a light favorable to the Commonwealth, "it is reasonable to infer that the Risoldis would not deliver altered documents purporting to be Summerdale Mills receipts to the very individual who could have sounded the alarm because he would have known they were altered and because he claimed they did not exist."  Commonwealth Brief at 37.  Moreover,

> [t]he fact that the altered documents appeared after a year of the Risoldis claiming they didn't exist and after [Appellee] testified they didn't exist but very shortly after the search warrant was executed at Summerdale Mills raises the reasonable inference that [Appellee] had told the Risoldis about the search and the items seized.

*Id.* at 38.  Further, Appellee's "lies to the grand jury dovetail perfectly with Claire Risoldi's lies to AIG.  Both claimed that Summerdale Mills did not have documentation to prove the window treatments had been replaced following

- 7 -

any of the fires and/or the cost of replacement. The identical lies establish the agreement to defraud AIG." ***Id.***

Based on the testimony, even in absence of the binder containing purportedly-doctored documents, I would not consider the Commonwealth's claim waived. Further, considering the evidence in the light favorable to the Commonwealth, including reasonable inferences, I would find the Commonwealth established a *prima facie* case of conspiracy to defraud AIG.

With regard to the charge of insurance fraud, the Majority concludes there is no showing that Appellee possessed any intent to defraud AIG, even considering Appellee's statements regarding the existence of various documents or his ability to provide those documents to the grand jury. Majority Op. at 28. The Majority suggests there was no evidence that Appellee had any knowledge of the contents of the binder produced by the Risoldis' investigator (despite the fact the binder was also provided to Appellee's counsel). ***Id.***

As the Commonwealth argues, the evidence suggested that Appellee purposely failed to produce subpoenaed documents and testified falsely before the grand jury about his efforts to locate documents and the existence of those records, about the failure of his computers, about information included on work orders that included customer names, and about Summerdale Mills' practice of not keeping hard copies of sales orders. Commonwealth Brief at 43-44. Appellee's "failure to produce the documents

pursuant to a legitimate subpoena and his subsequent lies under oath which corroborate and further the Risoldis' efforts to defraud AIG related to the window treatments claim establish [Appellee's] culpability as an accomplice to the insurance fraud." *Id.* at 44. Once again, I believe the Majority has failed to view the evidence and reasonable inferences in the light favorable to the Commonwealth when considering whether the Commonwealth has established a *prima facie* case. When properly viewed, I believe the Commonwealth has carried its burden of establishing a *prima facie* case of insurance fraud under 18 Pa.C.S.A. § 4117(a)(2) and Appellee's culpability as an accomplice under 18 Pa.C.S.A. § 306 in committing that crime.

Finally, with respect to the obstruction of justice charge, the Majority again finds waiver for failure to include "documents actually secured pursuant to the subpoena." Majority Op. at 29. While I do not dispute the lack of a complete record, I do not believe the failure to include the documents is fatal to the claim. Once again, there was testimony concerning the transactional documents recovered during execution of the search warrant and there was testimony relating to the window treatment fabrication diagrams voluntarily turned over by Appellee. The testimony revealed the nature of both categories of documents, thus enabling a reviewing court to understand to dissimilarity between what was recovered versus what was produced by Appellee. While the Majority suggests a review of the record fails to establish the Appellee had knowledge of the

existence of documents beyond the fabrication diagrams he produced, that conclusion clearly fails to view the evidence in a light favorable to the Commonwealth and certainly fails to consider reasonable inferences drawn from the testimony. I believe the evidence supports a *prima facie* case of obstruction of justice under 18 Pa.C.S.A. § 5101 based on Appellee's failure to produce subpoenaed documents and his statements under oath regarding the records at Summerdale Mills.

Finding none of the Commonwealth's claims waived and finding the Commonwealth established a *prima facie* case of perjury, conspiracy, insurance fraud and obstruction of justice, I conclude the trial court committed reversible error of law by dismissing the charges against Appellee. Therefore, I dissent.